## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**DON WOOD, individually,**
**CAREY EBERT, as trustee of the**
**Chapter 7 Bankruptcy Proceeding**
**for Donald and Kay Wood,**

      **Plaintiffs,**

**v.**                                                            **3:07cv95/MCR/EMT**

**DONALD RICKEY GREEN, individually;**
**EMILY MELINDA GREEN, individually;**
**and FLORIDA CLAIMS CONSULTANTS, INC.**
**n/k/a GREEN STATE PUBLIC ADJUSTERS,**
**INC., a Florida Corporation,**

      **Defendants/Third-Party Plaintiffs,**

**v.**

**KAY WOOD; SUNCOAST CLAIMS, INC.,**
**a Florida Corporation,**
**STORM CONTRACTING, INC., a Florida**
**Corporation;**
**SYLVENTION, INC., d/b/a HABITECH,**

      **Third-Party Defendants.**
_____/

## O R D E R

This cause comes before the court on defendants' Motion for Summary Judgment (doc. 70), plaintiffs' Motion for Summary Judgment (doc. 63), and defendants' Motion to Strike (doc. 105).  Upon consideration of the parties' written and oral arguments and for the reasons given below, defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part, plaintiffs' Motion for Summary Judgment is DENIED, and defendants' Motion to Strike is DENIED as moot.

**Background**

Defendants Donald and Emily Green are public adjusters in the state of Florida.  Emily Green is the president and sole shareholder of Defendant Florida Claims Consultants, Inc. n/k/a Green State Public Adjusters, Inc. (hereinafter, "FCC"), which performs public adjusting services in Florida.  In September and October 2004, Donald Green, who performed public adjusting and appraisal services on his own behalf and on behalf of FCC, contacted Plaintiff Don Wood about moving to Florida to help handle the large number of claims FCC was adjusting in the aftermath of Hurricane Ivan.

On October 6, 2004, shortly after arriving in Florida, Wood entered into a contract, signed by Wood and Emily Green, in which FCC agreed to "compensate Don Wood for damage appraisal and estimating Hurricane Ivan losses.  Each estimate provided by Wood will be paid by Florida Claims Consultants on a 60% of settlement amount as received."  Four days later, on October 10, 2004, Wood entered into a second contract, signed by Wood and Donald Green, in which FCC agreed to "provide to Don Wood clients that have damage to properties caused by Hurricane Ivan.  Don Wood will receive compensation of 60% of net funds received."  This agreement also identified Wood's responsibilities under the contract.[1]

During the course of his work for defendants, Wood received cash advances to cover his costs.  In addition, after a claim settled, Wood or the defendants would draft an invoice documenting Wood's compensation for that claim.  FCC would then issue Wood a check for this amount.  These checks were either issued directly to Wood or, at Wood's request, to Third-Party Defendants Storm Contracting, Inc., Habitech, or Suncoast Claims, Inc. (hereinafter, the "related businesses").[2]  Most of the checks issued directly to Wood were deposited into the accounts for Habitech or Suncoast Claims.  All checks issued to Storm Contracting, Inc. were transferred into accounts for Habitech or Suncoast Claims.

---

[1] The parties dispute whether this second contract was intended to replace the first contract.  The parties also dispute whether these agreements pertained to all claims for which Wood performed some work or only those claims for which Wood fully handled.  Finally, the parties also dispute whether there were the only agreements between the parties or whether Wood entered into separate oral contracts, either with Donald Green or FCC, for specific claims.

[2] Wood, or one of his family members, was directly affiliated with each of these businesses.

On July 28, 2005, while still performing services for FCC, Wood and his wife, Kay Wood, filed for Chapter 7 bankruptcy.[3]  Wood, assisted by counsel, did not disclose in his bankruptcy petition his contracts with FCC or the income he had received and was due to receive from FCC.  Wood's petition for bankruptcy was granted and the bankruptcy court appointed Plaintiff Carey Ebert as bankruptcy trustee.  On November 9, 2005, Wood was granted a no-asset discharge.

**Procedural History**

Wood filed his complaint in this case on March 1, 2007, and his amended complaint on April 20, 2007, in which he asserted claims for breach of contract against Donald and Emily Green and, in the alternative, breach of contract against FCC.  Wood alleges that after entering into the October 6, 2004, and October 10, 2004, contracts, the Greens (or FCC) paid Wood less than the 60% promised in those contracts. On May 11, 2007, defendants filed their answer and affirmative defenses, in which they asserted that Wood's claims were barred by the doctrine of judicial estoppel.[4]   On May 25, 2007, Wood petitioned to reopen his bankruptcy case and amend his schedules to include his claims against the defendants.  On August 1, 2007, Wood filed a motion in this court to join Ebert as a party, which the court granted.  Wood then filed a second amended complaint adding two claims paralleling the original claims, brought by Ebert as trustee for Wood's bankruptcy estate.

Defendants have now moved for summary judgment against both plaintiffs based on the doctrine of judicial estoppel.[5]  Defendants' motion also seeks summary judgment on plaintiffs' claim against Emily Green personally.  Plaintiffs have also filed a motion for summary judgment asserting that there are no issues of material fact as to the Greens' personal liability for breaching the contracts, or in the alternative, no issue of material fact as to FCC's liability for breaching the contracts.  Plaintiffs further assert that there is no issue of

---

[3]  References in this order to "Wood" refer to Don Wood, unless specifically noted.

[4]  Defendants also filed third-party claims against Kay Wood, Suncoast Claims, Inc., Storm Contracting, Inc., and Sylvention, Inc., d/b/a Habitech, seeking restitution and indemnification in the event a judgment was entered against the defendants requiring them to pay Wood or Wood's bankruptcy trustee.

[5]  In connection with their motion for summary judgment, defendants have requested that the court take judicial notice of certain filings in Wood's bankruptcy case. (Doc. 78.)  Plaintiffs have not objected to this request and have confirmed much of the information contained in these filings.  Thus, to the extent it is necessary, the court will take judicial notice of these filings.

material fact as to the measure of Wood's damages caused by defendants' breach.[6] Defendants have also filed a motion to strike certain portions of Wood's affidavits submitted in support of plaintiffs' motion for summary judgment and in opposition to defendants' motion for summary judgment.[7]

**Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of *some* alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original).  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it may affect the outcome of the case under the applicable substantive law.  See id.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings.  Instead, the nonmoving party must

---

[6]  Both parties have requested that the court take judicial notice of certain facts and documents relating to the administrative dissolution and reinstatement of FCC.  (Docs. 69 and 102).  At oral argument, plaintiffs abandoned their argument related to this information and thus these requests will be denied as moot. The defendants' request, however, that the court take judicial notice that FCC has changed its name to Green State Public Adjusters, Inc. (doc. 102) will be granted.

[7]  At oral argument, the court noted that Wood's standing to assert the claims in this case was a threshold issue.  This issue had been raised by defendants in a previously filed motion to dismiss, but had not yet been addressed by the court.  The court invited the parties to submit supplemental memoranda on this issue.  After receiving the parties' briefs, the court noted that the second amended complaint did not clearly state the basis for Wood's standing.  The court thus granted the defendants' motion to dismiss the second amended complaint and dismissed the complaint without prejudice.  The court granted plaintiffs leave to file a third amended complaint clearly setting forth the factual basis for Wood's standing.  The court directed plaintiffs that any amended complaint should pertain only to the plaintiffs' standing allegations and thus the amended complaint would not affect the parties' pending motions for summary judgment.  The court therefore applies the parties' motions for summary judgment to plaintiffs' third amended complaint.

respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial.  Fed. R. Civ. P. 56(e). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party.  See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment.  See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

**Discussion**

**I.  Standing**

At the outset, the court must decide whether Wood has standing to assert the claims in this case.[8]  Both parties believe Wood has standing, but for different reasons.  According to defendants, Wood has standing because the bankruptcy trustee has agreed to distribute to him thirty-five percent (35%) of the proceeds from any judgment in this case as well as any amount above the sum claimed by Wood's creditors plus attorney's fees.  Plaintiffs maintain instead that Wood only has standing to pursue a post-petition claim for breach of contract because that claim is not part of the bankruptcy estate and thus cannot be pursued by the trustee.

When an individual petitions for bankruptcy under Chapter 7 of the Bankruptcy Code, a bankruptcy estate is created which includes "all legal or equitable interests of the debtor in property as of the commencement of the case," such as "legal causes of action the debtor had against others at the commencement of the bankruptcy case."  Mennen v. Onkyo Corp., 248 Fed.Appx. 112, 113 (11th Cir. 2007) (per curiam) (citing 11 U.S.C. § 541(a); quoting In re Icarus Holding, LLC, 391 F.3d 1315, 1319 (11th Cir. 2004)); see also Witko v. Menotte (In re Witko), 374 F.3d 1040, 1042 (11th Cir. 2004) ("Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not."); Miller v. Shallowford Cmty. Hosp., Inc., 767 F.2d 1556, 1559 (11th Cir. 1985) (per curiam) (holding that a debtor's

---

[8] Both parties agree that Ebert, as bankruptcy trustee, has standing to assert the claims in this case.

3:07cv95/MCR/EMT

bankruptcy estate includes causes of action "arising from contract"). After the creation of the bankruptcy estate, the bankruptcy trustee becomes the representative of the estate and the estate's interests. See Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) (citations omitted). The bankruptcy trustee thus is the proper party with standing to prosecute causes of action belonging to the estate. Id.

A debtor's bankruptcy estate also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Thus amounts owed to a debtor under pre-petition contracts, for which the debtor has performed the services required to receive payment pre-petition, are the property of the bankruptcy estate. See Grochal v. Ocean Tech. Servs. Corp. (In re Baltimore Marine, Indus., Inc.), 476 F.3d 238, 240 (4th Cir. 2007) (citing Ralar Distribs., Inc. v. Rubbermaid, Inc. (In re Ralar Distribs., Inc.), 4 F.3d 62, 67 (1st Cir. 1993)). Post-petition payments for services performed post-petition, however, are not the property of the estate, even if the contract from which the payments are derived was entered into pre-petition. See Clark v. First City Bank (In re Clark), 891 F.2d 111 (5th Cir. 1989); see also Andrews v. Riggs Nat'l Bank of Washington, D.C., (In re Andrews), 80 F.3d 906, 910 (4th Cir. 1996) ("[Section 541(a)(6)] allows the debtor to exclude from his estate any compensation or salary he might earn after the date of the petition."). In this case, therefore, earnings derived from Wood's pre-petition services to defendants are the property of the bankruptcy estate and only Ebert, as trustee for Wood's bankruptcy estate, is the real party in interest with standing to pursue claims for these funds (hereinafter, Wood's "pre-petition claims").[9] Any earnings derived from Wood's post-petition services to defendants, however, are not part of the bankruptcy estate under § 541(a)(6) and thus Wood has standing to pursue claims for these funds (hereinafter, Wood's "post-petition

---

[9]  Defendants' argument that Wood has standing to assert pre-petition claims because of his settlement agreement with the trustee is unconvincing. The mere possibility that Wood "may realize some benefit from the Estate's prosecution of this lawsuit is not sufficient to confer standing." See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 375 B.R. 719, 725 (S.D.N.Y. 2007) (quoting Ardese v. DCT, Inc., 2006 WL 3757916 *5 (E.D.Okla. Dec. 19, 2006)). If Wood had standing to assert his pre-petition claims under these circumstances, so too would any of his creditors. See id.

claims").[10]

## II.  Judicial Estoppel

Defendants argue that both Wood and Ebert should be judicially estopped from pursuing the claims in this case based on Wood's failure to disclose his business relationship with and income from the defendants in his bankruptcy petition and the fact that Ebert had knowledge of Wood's failure to disclose.

Judicial estoppel is an equitable doctrine invoked at a court's discretion.  Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002) (citing New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).   It precludes a party "from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  Id. (internal quotation marks omitted).  "The purpose of the doctrine, is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  Id. (internal quotation marks omitted).  When determining whether to apply the doctrine of judicial estoppel, courts in the Eleventh Circuit must "begin with a consideration of two primary factors."  Ajaka v. Brooksamerica Mortgage Corp., 453 F.3d 1339, 1344 (11th Cir. 2006).  "First, the allegedly inconsistent positions must have been taken under oath in a prior proceeding, and second, they must have been calculated to make a mockery of the judicial system."  Id. (internal quotation marks omitted).  A party's intent to make a mockery of the judicial system can be inferred from the record where the party both knew about the undisclosed information and had a motive to conceal this information from the bankruptcy court.  See Burnes, 291 F.3d at 1287-88.   To apply judicial estoppel, however, the party's intent must be "cold manipulation" rather than some "unthinking or confused blunder."  Ajaka, 453 F.3d at 1345 n.7 (quoting Johnson Serv. Co. v. Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir. 1973));

---

[10] It is not clear from the record what portion of Wood's alleged damages derive from Wood's pre-petition versus his post-petition services for the defendants.  In the event that all of Wood's work for the defendants on these contracts was completed before he filed his petition for bankruptcy, Wood would not have standing to remain a party in this case.  Further, Donald Green has asserted that he entered into a number of additional oral contracts with Wood, some on his own behalf and some on behalf of FCC.  If any of these alleged contracts were entered into post-petition, then those contracts and their proceeds would not be the property of the bankruptcy estate and Wood would have standing to pursue claims for those funds.  These issues will be addressed at trial.

see also <u>Barger v. City of Cartersville, Ga.</u>, 348 F.3d 1289, 1294 (11th Cir. 2003) (holding that the intent necessary to justify the application of judicial estoppel must be "purposeful contradiction-not simple error or inadvertence").  The above factors, however, are "not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case . . . ." <u>Burnes</u>, 291 F.3d at 1286.

### A.  *Judicial Estoppel Against Plaintiff Ebert on Wood's Pre-Petition Claims*

The court readily concludes that Wood made sworn statements in his bankruptcy petition which are inconsistent with the positions he has taken in this case regarding his pre-petition claims.  In this case Wood admitted in deposition to having been paid by the defendants at least $56,000 for his services in the first three months of 2005.  Moreover, in support of his claims in this case, Wood asserts that he has been paid $384,636.97 by the defendants and is entitled to approximately $1.4 million more.[11]  This stands in stark contrast to his bankruptcy petition, in which Wood stated that as of July 1, 2005, he had not received any income so far that year.  Wood further stated that his projected income at that time was only $1,500 per month.  Additionally, the court further notes that Wood's bankruptcy petition contains no mention of his relationship with the defendants; he did not list the subject contracts in any section of the petition nor list any of the defendants as employers.  Wood also failed to disclose that at the time he submitted his petition he had transferred most of the money he received from the defendants into his related businesses and had also directed FCC to issue checks directly to his related businesses.  Ebert testified in her deposition that such actions could potentially constitute fraudulent transfers.  (Ebert dep. at 44).

The court can infer from the record that Wood's omissions were not inadvertent, but rather were intended to conceal his relationship with defendants, including the attendant income.  At the time he submitted his sworn bankruptcy petition, Wood clearly had knowledge the income he had derived and was due to derive from his work for FCC.  Further, Wood had a clear motive to conceal this information.  By omitting from his petition any mention of his relationship with and income from defendants, Wood was able to obtain a complete, no-asset

---

[11]  It is not clear from the record exactly how much money Wood had received or was projected to receive from the defendants at the time he filed his bankruptcy petition; however, the record is clear that it was significantly greater than the "zero" amount he swore to in his bankruptcy petition.

discharge of his debts in Chapter 7 while keeping all of the income he had derived and was due to derive from his work for FCC.  The position he has taken in this case regarding his entitlement to these monies is "clearly inconsistent" with his position in bankruptcy.  See Ajaka, 453 F.3d at 1344 (holding that judicial estoppel is only appropriate where the two positions are "clearly inconsistent").  The court thus finds that by his conduct in these two cases Wood has intended to make a mockery of the judicial system and judicial estoppel against him is therefore appropriate.[12]  See Burnes, 291 F.3d at 1287-88.

Judicial estoppel cannot be invoked against Ebert, however, because Wood's misconduct cannot be imputed to her.  See Parker, 365 F.3d at 1272.  While it is correct that once a debtor files for bankruptcy, the bankruptcy trustee, rather than the debtor, becomes the real party in interest on claims related to the property of the bankruptcy estate, the trustee does not become "tainted or burdened by the debtor's misconduct."  Id. at 1273.  Judicial estoppel against the trustee is only appropriate if the trustee himself has made inconsistent statements which were calculated to make a mockery of the judicial system.  Id.  Defendants have produced no evidence that Ebert has committed any actions which warrant application of judicial estoppel against her and therefore defendants' motion for summary judgment as to Wood's pre-petition claims is due to be denied.[13]

Based on Wood's conduct, for which he should receive no benefit, the court finds it appropriate to limit any potential recovery by Ebert in this case to that necessary to satisfy the unsecured creditors in Wood's bankruptcy case.  See Parker, 365 F.3d at 1273 n. 4 ("[I]n the unlikely scenario where the trustee would recover more than an amount that would satisfy all

---

[12]  Against this finding, Wood argues he did not report the income from the defendants because it constituted business, rather than personal, income.  This argument, however, is not supported by the record.  The record shows instead that (1) only Wood, not any of the related businesses, entered into contracts with the defendants; (2) FCC issued a number of checks made out to Wood personally, which Wood then deposited into the related businesses; (3) FCC issued checks to Wood's related businesses at Wood's request; and (4) Wood filed suit on his own behalf claiming that he, not any of the related businesses, is entitled to recover on the contracts.  Further, although Wood stated in his deposition that he informed Ebert of his "Florida income," this is insufficient to prevent the application of judicial estoppel against Wood, especially given Wood's complete failure to disclose his relationship with and income from the defendants in his bankruptcy petition.  See Barger, 348 F.3d at 1296.

[13]  The court is not persuaded by defendants' arguments to the contrary.  There is no evidence that Ebert herself made any inconsistent statements under oath.

3:07cv95/MCR/EMT

creditors and the costs and fees incurred, then, perhaps judicial estoppel could be invoked by the defendant to limit any recovery to only that amount and prevent an undeserved windfall from devolving on the non-disclosing debtor."). This limitation on recovery is an appropriate balance of the equities in this case because it ensures that Wood's lack of disclosure does not harm the interests of his third-party creditors while also ensuring Wood does not enjoy a windfall from his manipulation of the judicial system. Failing to limit any potential recovery in this case would diminish debtors' necessary incentive to truthfully and fully disclose their assets, income, and transfers, and would suggest that debtors should only fully disclose this information if their lack of disclosure is discovered.[14] Burnes, 291 F.3d at 1288; see also In re Brooks, 2008 WL 1721876 *4 (Bnkr.N.D.Ala. Apr. 10, 2008) (relying on Parker to limit a trustee's recovery); In re Williams, 310 B.R. 442, 444 (Bnkr.N.D.Ala. 2004) (same).

   **B.   Judicial Estoppel Against Plaintiff Wood on Wood's Post-Petition Claims[15]**

       It is not clear from the record whether Wood made sworn statements in his bankruptcy petition which are clearly inconsistent with the positions he has asserted in this case regarding his post-petition claims. See Ajaka, 453 F.3d at 1344. Wood was not required to disclose any causes of action based on post-petition earnings, as such causes of action are not the property of the estate. See Witko, 374 F.3d at 1042; Carroll v. Henry County, Ga., 336 B.R. 578, 583-84 (N.D.Ga. 2006). Further, it is not clear whether Wood's statements in his bankruptcy petition as to his current income and any expected change in his current income pertain to pre-petition or post-petition earnings. Because there are issues of material fact as to whether it is appropriate to apply judicial estoppel as to Wood's post-petition claims,

---

   [14] In his Affidavit in Support of Plaintiffs' Motion for Summary Judgment, Wood disclosed that he has received $384,636.97 from FCC for his services. As determined in Section I, the portion of this amount attributable to pre-petition services, minus any applicable exemptions, is the property of the bankruptcy estate. Should recovery in this case be insufficient to satisfy creditors in Wood's bankruptcy case, the court assumes that the portion of these funds which is property of the bankruptcy estate, including those amounts which have been transferred into Wood's related businesses, may be available to satisfy the creditors' claims. Because of this, as well as the possibility that Wood engaged in a series of fraudulent transfers, see supra page 8, it may be necessary for Mr. Smith to reassess whether he faces a conflict of interest in representing both Wood and Ebert in this case.

   [15] Defendants did not address application of judicial estoppel to Wood's post-petition claims in their motion for summary judgment, presumably because they assumed that all of Wood's earnings from his work for the defendants constituted property of the bankruptcy estate.

defendants' motion for summary judgment as to these claims is due to be denied.

## III.   Parties' Cross-Motions for Summary Judgment as to Emily Green's Liability

The parties have filed cross-motions for summary judgment as to Emily Green's personal liability for breaches of the October 6, 2004, contract.  This contract states that "we Florida Claims Consultants, Inc., agree to compensate Don Wood for damage appraisal and estimating Hurricane Ivan losses."  Based on this plain language and the absence of any evidence to the contrary, the court finds that no reasonable jury could conclude that Emily Green was acting in any capacity other than on behalf of FCC when she signed the contract with Wood.[16]  Defendants' motion for summary judgment as to Emily Green's personal liability is therefore due to be granted and plaintiffs' cross-motion for summary judgment is due to be denied.

## IV.   Plaintiffs' Motion for Summary Judgment as to Donald Green's Liability

Plaintiffs argue that summary judgment should be granted as to Donald Green's personal liability for breaches of the October 10, 2004, contract because Donald Green is not an officer or employee of FCC.  Plaintiffs have presented no evidence that Donald Green lacked the authority to bind FCC when he signed the contract.  To the contrary, while Donald Green may not have been an officer or employee of FCC, it is clear from the record that he acted as FCC's agent in a number of areas relating to the company's public adjusting business.  Moreover, as was pointed out at oral argument, the contract does not personally obligate Donald Green to do anything.  Thus, at a minimum, there is an issue of fact as to whether Donald Green signed the contract on FCC's behalf and summary judgment in plaintiffs' favor is not appropriate on this claim.[17]

---

[16] Plaintiffs' reliance on Fla. Stat. § 626.8738 is not persuasive.  While this section makes it a felony to perform public adjusting services without a license and an appointment, nothing in the statute implies that a non-licensed individual (or company) cannot enter into and enforce employment contracts.  Plaintiffs have provided no case law to the contrary.

[17] Defendants have not filed a cross-motion for summary judgment as to Donald Green's personal liability because they believe there are issues of material fact as to whether Donald Green entered into contracts with Wood, separate from the initial contracts of October 6, 2004, and October 10, 2004, for which Donald Green would be personally liable.

## V.  Plaintiffs' Motion for Summary Judgment as to FCC's Liability

Plaintiffs argue that if Emily and Donald Green are not individually liable for the asserted breaches of contract, then summary judgment should be granted as to FCC's liability for these breaches.  Plaintiffs' motion for summary judgment as to FCC's liability, however, will be denied because there are clear issues of material fact as to whether FCC breached the contracts with Wood.

## VI.  Plaintiffs' Motion for Summary Judgment as to Damages

Plaintiffs argue that summary judgment should be granted as to Wood's damages in this case.  Plaintiffs argue that the measure of Wood's damages can be calculated by totaling the funds defendants received on claims for which Wood performed work and multiplying this amount by the 60% he was promised in his contracts.   Just as there are clear issues of material fact as to whether defendants breached the contracts with Wood, there are also clear issues of material fact as to Wood's damages.  Plaintiffs' motion for summary judgment as to damages therefore will be denied.

## VII.  Defendants' Motion to Strike

Finally, the court need not address defendants' motion to strike.  Wood's affidavits in opposition to defendants' motion for summary judgment and in support of plaintiffs' motion for summary judgment had no impact on the court's findings and thus the defendants' motion to strike is denied as moot.

Accordingly, it is hereby ordered:

1.  Plaintiffs' and Defendants' requests to take judicial notice are GRANTED in part and DENIED in part;

    A.  Plaintiffs' and Defendants' requests to take judicial notice of certain facts and documents related to FCC's administrative dissolution and reinstatement (docs. 69 and 102) are DENIED as moot;

    B.  Defendants' request to take judicial notice of certain filings related to Wood's bankruptcy case (doc. 78) is GRANTED.

    C.  Defendants' request to take judicial notice that FCC has changed its name to Green State Public Adjusters, Inc. (doc. 102) is GRANTED.

2.    Defendants' motion for summary judgment (doc. 70) is GRANTED in part and DENIED in part;

    A.    Defendants' motion for summary judgment against the plaintiffs based on judicial estoppel is DENIED, but the court will limit any recovery Plaintiff Ebert receives at trial to the amount necessary to satisfy Wood's creditors;

    B.    Defendants' motion for summary judgment as to Emily Green's liability is GRANTED.

3.    Plaintiffs' motion for summary judgment (doc. 63) is DENIED.

4.    Defendants' motion to strike (doc. 105) is DENIED as moot.

5.    The clerk is directed to terminate Defendant Emily Green as a party to this case.

DONE AND ORDERED on this 4th day of August 2008.


_s/ M. Casey Rodgers_

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**